## UNITED STATES DISTRICT COURT
## IN THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

GLENDA PEREZ,

              Plaintiff,

      v.                                    Case No. 8:18-cv-01862-T-17-JSS

CIGNA HEALTH & LIFE INSURANCE
CO.,

              Defendant.

## CIGNA HEALTH & LIFE INSURANCE CO.'S OPPOSITION TO PLAINTIFF'S MOTION TO VACATE ARBITRATION AWARD

COMES NOW Defendant, Cigna Health & Life Insurance Co. ("Cigna"), and responds to Plaintiff Glenda Perez's ("Ms. Perez" or "Plaintiff") Application to Vacate Arbitration Award ("Motion to Vacate").

## INTRODUCTION

This matter is before this Court on Ms. Perez's allegation that there is evident partiality on the part of AAA appointed arbitrator Carlos Burruezo in the handling of this matter through the arbitration proceedings. She therefore asks this Court to vacate the award. Although Ms. Perez initially accepted another arbitrator and then "took back" her acceptance of that arbitrator because of her perception of potential partiality, after reviewing Mr. Burruezo's CV disclosing prior employment with the law firm representing Cigna - Littler, she affirmatively indicated, in an email, that Mr. Burruezo was her "first choice" to serve as the arbitrator in this matter. After Cigna's counsel accepted her first choice, counsel again noted to Ms. Perez that Mr. Burruezo used to be employed at Littler. She continued on with the appointment. Then, again, a few days

later, Mr. Burruezo sent a separate detailed email making the same disclosure and indicating that he was the managing shareholder at the Orlando office of Littler for about seven years.   Mr. Burruezo's email clearly indicated that he felt that he could still be impartial but invited the parties to ask additional questions or to simply indicate any concerns directly with AAA. Despite all of this, Ms. Perez persisted and actively litigated her claims.

It was not until after Mr. Burruezo entered summary judgment – finding that Ms. Perez could not sustain her claims – that Ms. Perez first raised her concerns of partiality.   Further, despite the high standard that a movant must meet to establish partiality and compel a Court to vacate an arbitration award, Ms. Perez has offered no evidence of actual partiality or of any undisclosed facts that would suggest partiality.   Thus, Ms. Perez's motion must be denied in its entirety and the arbitration award affirmed.

## FACTUAL BACKGROUND

### A.    Ms. Perez's Employment and Initiation of the Arbitration Process.

Ms. Perez is a former employee of Cigna who was employed between October 7, 2013 and July 27, 2017.   As part of her employment with Cigna, Ms. Perez entered into a contract to arbitrate any disputes relating to the terms and conditions of her employment utilizing AAA and AAA's employment arbitration rules ("The Agreement").   (Exhibit A.)  The Agreement requires that the arbitration be conducted in accordance with the Federal Arbitration Act.  *Id.*

After her termination of employment, Ms. Perez initiated a request for arbitration in accordance with the Agreement. (Exhibit B.)  Specifically, on August 11, 2017, AAA received the Demand for Arbitration from Ms. Perez.  (Exhibit C.) On August 18, 2017, AAA sent a letter to the parties enclosing a list for selection of arbitrators including the names of ten (10) potential arbitrators and also including their CVs.  *Id.*

**B.      Initial Arbitrator Selection and Rejection.**

After receiving this first list of potential arbitrators, the parties agreed upon one individual.  Thereafter, the selected arbitrator made her initial disclosures as required by AAA which included a disclosure that she had previously mediated a matter in which an attorney of record for Cigna was involved.  (Exhibit D.)  Ms. Perez subsequently informed AAA and Cigna that, because of the arbitrator's disclosure, she wished to not proceed with that arbitrator but instead wanted to choose another arbitrator. (Exhibit E.)

**C.      Subsequent Arbitrator Panel and CVs Sent to Parties.**

After request by Ms. Perez to provide a second panel of potential arbitrators, on September 27, 2017, AAA sent out a second list of seven potential arbitrators including the name of Mr. Carlos Burruezo who was ultimately selected by the parties. (Exhibit F.)  Importantly, along with this correspondence, AAA sent copies of each arbitrator's CV including the CV of Mr. Burruezo.  *Id.*  That CV specifically discloses that Mr. Burruezo was the "Managing Shareholder of Littler Mendelson between 2007 and 2014."  *Id.*

**D.      October 18, 2017 Letter from AAA Providing Courtesy Opportunity to "Unstrike" Any Arbitrator at the Parties' Discretion.**

After receiving the seven additional names, by the date provided by AAA, the parties were unable to agree upon any of the proposed arbitrators.  (Exhibit G.)  On October 18, 2017, AAA sent a letter to the parties indicating that under the rules, AAA has the authority to administratively appoint the arbitrator due to the fact that the parties could not agree.  However, AAA was allowing the parties an additional day to confer and re-evaluate objections and possibly "unstrike" any arbitrator previously stricken.  *Id.*

3

### E.   Ms. Perez Tells AAA That An Arbitrator Can Be Agreed Upon and Suggests, That Her First Choice, Carlos Burruezo, to be Appointed.

In response to AAA's offer to allow the parties an extra day to "unstrike" any arbitrator, counsel for Cigna sent an email asking for an extra few days to confer and asked for a third list of potential arbitrators should the parties fail to agree. (Exhibit H.)  The AAA responded allowing the extra time and indicating that a third panel would be provided if the parties agreed. *Id.*

In response to the e-mail from AAA, Ms. Perez sent an email to counsel for Cigna stating that a third list would not be needed.  Thereafter, Counsel for Cigna called and emailed Ms. Perez to discuss possible agreements.  *Id.*  Ms. Perez then emailed back the following:

> Good afternoon Mr. Schmitz,
>
> Do you recall the time you called me because I never received any call/VM from your office yesterday.
>
> My selections are below with Carlos being my number one choice.  If you're not in agreement to any of them, then it would be best to have the AAA appoint one.
>
> 1—Carlos Burruezo
> …

*Id*.  It cannot be disputed that this email was sent by Ms. Perez following Mr. Burruezo's disclosure that he had been employed by Littler Mendelson, the law firm representing Cigna in this matter, as the Managing Shareholder for 7 years.  Further, it cannot be disputed that while Ms. Perez was savvy enough to be "cautioned" by a disclosure made by the first arbitrator agreed upon and to take action in alerting AAA that she was concerned of potential bias, she did not do the same here as to Mr. Burruezo after full disclosure of his prior employment by the same firm

representing Cigna during the same time frame that Mr. Jeffrey Jones[1], the shareholder assigned to this matter, also worked there.

### F.     Cigna Agrees to Mr. Burruezo and Cigna's Counsel Reminds Ms. Perez that Mr. Burruezo Formerly Worked at Littler.

Within a couple of hours of Ms. Perez's suggestion to use Mr. Burruezo as the arbitrator in this matter, Counsel for Cigna responded stating:

Hi Glenda:

We accept Carlos Burruezo.  As you are aware, Mr. Burruezo used to work in our office.

Thank you and have a nice weekend.

(Exhibit H.)

### G.     Mr. Burruezo's Disclosures.

After being invited to serve as the arbitrator in this matter, Mr. Burruezo made his own disclosures per AAA rules indicating that he felt that he could be unbiased in acting as the arbitrator in this matter.   Further, after the standard disclosure questionnaire, Mr. Burruezo also sent another email on the same day stating the following:

Dear Parties:

Please consider this as an amendment to the responses I provided to the arbitrator appointment. After further review of the pleadings and other matters filed with AAA, I feel compelled to note that, from May 2007 to March 2014, I served as a Shareholder with Littler Mendelson, P.C., the law firm that represents the Respondent in this matter.  I was a resident of the Firm's Orlando Office, and served of the Orlando Office's Managing Shareholder from 2007 through 2013.  During my tenure there (or at any other point in time in my career), I never handled any matters for CIGNA.  I left the firm in March 2014 to join my wife (at Burruezo & Burruezo, PLLC) to focus my practice on the mediation and arbitration of employment disputes.  I do not feel that my previous experience with Littler Mendelson, P.C. in any way causes me to feel any bias toward any particular party.  As an arbitrator, my aim is to weigh the facts and law consistent with the evidence in an unbiased fashion.

---

[1] Mr. Jones' dates of employment at Littler were openly available on Littler's website.  As seen by Ms. Perez's attachments to her Motion to Vacate, it is clear that Ms. Perez is savvy enough to search the internet and could have easily discovered this information.

Of course, I will leave it up to the parties to assess my ability to serve, and will honor and respect the will of the parties.

If you would like to schedule a hearing to discuss further, please so advise.  You may also advise AAA of any concern you may have.

(Exhibit I.)

Thus, being told at least three times that Mr. Burruezo managed the Orlando office of Littler Mendelson for seven years, Ms. Perez, purposefully elected to proceed with him serving as the arbitrator.

### H.      Pre-Hearing Discovery and Motion for Summary Judgment.

After an initial scheduling hearing was held in this matter with Mr. Burruezo, Ms. Perez and Mr. Greg Schmitz as counsel for Cigna, the parties began the discovery process.  After the final hearing was set and discovery began, due to personnel changes in Littler's Orlando office, another associate, Nancy Johnson took over the day to day handling of this matter instead of Mr. Schmitz[2].  (Exhibit J.)

After Ms. Johnson tool over responsibility of the litigation of this matter for Cigna, Ms. Perez actively filed several motions including motions seeking extensive ESI discovery and motions seeking sanctions due to objections to the breadth of the ESI requests. (Composite Exhibit K.) As to each motion filed, Mr. Burruezo schedule a telephonic hearing and each party was provided a full opportunity to present argument and evidence. (Composite Exhibit L.) Overall, Mr. Burruezo's determinations were not consistently made in favor of one party over the other but, instead, he often overruled Cigna's discovery objections and required additional disclosures.  *Id.*  For example, as to Ms. Perez's motions to request additional ESI discovery, Mr.

---

[2] Ms. Perez notes that no additional disclosure regarding Ms. Johnson was ever made.  However, notably, she also does not and cannot suggest that any disclosure regarding Ms. Johnson should have been made.   She has not and cannot establish any prior relationship or course of dealings between Mr. Burruezo and Ms. Johnson.

Burruezo, over objections of Cigna, required additional search terms, collections and disclosures requiring what Cigna felt was overbroad and irrelevant documents.

I.     **Mr. Burruezo Accepted Some of Cigna's Theories in Its Motion for Summary Judgment and Ultimately Granted the Motion But Also Rejected Theories Argued By Cigna.**

After discovery, Cigna briefed and filed a motion requesting that summary judgment be granted in the matter arguing that Ms. Perez could not present facts that would allow the conclusion that Cigna had violated the law.  (Exhibit M.)  On June 22, 2018, Mr. Burruezo sent the parties an email indicating that he had carefully and thoroughly reviewed the Motion for Summary Judgment, the Response, the record evidence, and applicable case law, and he had determined that summary judgment would be appropriate.   (Exhibit N.)  Although he indicated that he had not yet had a chance to prepare a comprehensive order, he wanted to let the parties know because the hearing was scheduled to begin only four days later.  *Id.*   Notably, Mr. Burruezo took the motion under advisement for twenty days prior to sending the email and presumably had time to carefully consider the evidence and arguments presented.

On July 19, 2018, Mr. Burruezo entered his order on the motion for summary judgment. (Exhibit O.)  On at least two points argued by Cigna in support of summary judgement, Mr. Burruezo agreed with Ms. Perez.   Further, the order references applicable case law cited both by Cigna, by Ms. Perez and case law that was not cited but that Mr. Burruezo independently relied upon.  *Id.*  Overall, it is clear by a review of the seven and a half page order analyzing the record evidence and law that Mr. Burruezo carefully and thoroughly considered the motion before reaching his conclusion that summary judgment was appropriate.

**J.     There Were No Ex Parte Communications Between Cigna's Counsel and Mr. Burruezo.**

Ms. Perez comments in her Motion to Vacate that "Petitioner was made aware of three ex parte incidents that were made via email between the arbitrator and respondents," and lists three exhibits which supposedly support this statement. (Dkt. 1, p. 10.)

The first is an email from Ms. Perez to Mr. Burruezo asking for an email containing a "subpoena order for [her] husband's deposition."   In that document, Mr. Burruezo responds indicating that he will send her a copy.   This exhibit does not show any type of ex parte communication.  (Exhibit P.)

The second alleged "ex parte" communication is another copy of the same email regarding the subpoena along with a response from Nancy Johnson stating the following: "Glenda, You would not already have this as we do not typically send the opposing party a deposition subpoena for a third party witness and it is not required by the rules.  You were provided a notice as required.  Regardless, we'd be happy to send you a copy of the subpoena – Vicki [counsel's secretary also copied]- could you please forward that to Ms. Perez?  Do you need another copy of the notice also?"   (Exhibit Q.)  Again, this exhibit does not contain any communication only between the arbitrator and one of the two parties.  Further, it does not show any type of ex parte communication.  At most, what can be reasonably inferred from this email is that Cigna's counsel's office coordinated with the office of the arbitrator to have a subpoena issued pursuant to rules.

Last, Ms. Perez identifies an email written July 12, 2018 from Ms. Johnson to Ms. Perez stating: "Thank you Glenda.  I am going to ask the Arbitrator for permission to file our trial brief no later than noon tomorrow – would you like to make it a joint motion to allow both of our

briefs as well as the stipulation [due] by then?  Please let me know."  (Exhibit R.)  This exhibit again, in no way is an ex parte communication and in no way suggests or evidences any ex parte communication.  It is, on its face, an attempt to meet and confer regarding a motion that was being prepared to be filed.

## THE FAA ALLOWS A COURT TO VACATE AN ARBITRATION AWARD ONLY UPON PROOF BY THE PARTY REQUESTING THAT THE AWARD BEING VACATED THAT EVIDENT PARTIALITY EXISTS.

A party seeking to vacate an arbitration award bears a heavy burden. 9 U.S.C.A. §10(a). In fact, as acknowledged by Ms. Perez, to vacate an arbitration award based on evident partiality or corruption in the arbitrator, (the ground raised by Ms. Perez), it is well settled that the movant must establish either: (1) an actual conflict exists, or (2) the arbitrator knows of, but fails to disclose, information which would lead a reasonable person to believe that a potential conflict exists.  *See,  Johnson v. Directory Assistants, Inc.*, 797 F.3d 1297 (11th Cir. 2015) (Even assuming one party used particular arbitrator to conduct several previous arbitrations, such evidence would not have created a reasonable impression of bias as required to vacate arbitration award on basis of evident partiality.); *Austin South I, Ltd. v. Barton-Malow Co.*, 799 F.Supp. 1135 (M.D.Fla. 1992) (Evident partiality exists where reasonable person would have to conclude that an arbitrator was partial to one party to the arbitration; a mere 'appearance of bias' is insufficient to vacate an arbitration award.); *University Commons-Urbana, Ltd. v. Universal Constructors, Inc.*, 304 F.3d 1331, 1339 (11th Cir. 2002).

Speculation of partiality, particularly when any prior relationship was fully disclosed, is insufficient to support such a motion.  *See*, *Stone v. Theatrical Inv. Corp.*, 64 F.Supp.3d 527 (S.D.N.Y. 2014) (arbitrator did not display evident partiality in dispute where arbitrator had ample evidence to support decisions, arbitrator made decisions favoring both parties, and any

claim of partiality was based in pure speculation.); *Lashco, Inc. v. Erickson*, 700 F.Supp. 960 (N.D.Ill. 1988) (Claim that alleged errors of arbitrators amounted to partiality was not sufficient to establish evident partiality.).  Further, when disclosure of the very basis on which the claimed facts that create the alleged partiality was made, vacating the award is improper.  *See, Lucent Technologies, Inc. v. Tatung Co.*, 379 F.3d 24 (2nd Cir. 2004) (Vacation of arbitration award on ground of partiality was not warranted where arbitrator made prior disclosure.); *Reed & Martin, Inc. v. Westinghouse Elec. Corp.*, 439 F.2d 1268 (2nd Cir. 1971) (Arbitration award cannot be set aside on ground of bias of arbitrator where arbitrator followed obligation to disclose any circumstances likely to create presumption of bias.)  Where information about an arbitrator is not known in advance, but could have been ascertained by more thorough inquiry or investigation, postaward challenge suggests that nondisclosure is being raised merely as tactical response to having lost arbitration award or inappropriate attempt to seek "second bite at the apple" because of dissatisfaction of the outcome and award should not therefore be vacated.  *See, UCO Terminals, Inc. v. Apex Oil Co.*, 583 F.Supp. 1213 (S.D.N.Y. 1984).

### MS. PEREZ WHOLLY FAILS TO PRESENT ANY EVIDENCE OF ACTUAL PARTIALITY OR OF UNDISCLOSED INFORMATION THAT WOULD LEAD A REASONABLE PERSON TO BELIEVE THAT MR. BURRUEZO WOULD BE IMPARTIAL

Ms. Perez's Motion to Vacate argues that the arbitrator's decision to grant summary judgment on her claims brought against her former employer should be overturned based on an array of various suppositions and innuendos that she suggests for the first time only after her claim is dismissed.  While many of the allegations raised by Ms. Perez are disputed, none rise to the level of suggesting, much less establishing, that the arbitrator could not be unbiased. Certainly, given the undisputed fact that Ms. Perez not only accepted Mr. Burruezo after at least three disclosures that he had previously been employed as the Managing Shareholder of the

Orlando Littler office but actually suggested Mr. Burruezo and labeled him as her "first choice," it is clear that her postaward complaints are nothing more than her attempt to gain a "re-do" because she is dissatisfied and upset that she could not establish a viable claim.

### A.    The Fact that Ms. Johnson Took Over the Day-To-Day Handling of the Matter on Behalf of Cigna Does Not Suggest Bias.

First, Ms. Perez notes that Ms. Johnson "took over the case," allegedly with no explanation, and points out that no disclosure was made regarding a relationship to the parties. Next, she suggests that soon thereafter, "issues regarding discovery deadlines and hearing dates were disputed." (Motion to Vacate, ¶¶ 13 – 15.)

Although, as Ms. Perez notes, there were no disclosures made regarding any prior relationship between Ms. Johnson and the parties (or the arbitrator), there is no evidence that there was any relationship to disclose. In fact, there was none. As for deadlines, there is no suggestion that any deadlines were actually moved or any bias or prejudice occurred. Certainly, when a new attorney with his or her own schedule becomes involved in a matter that has deadlines set, those deadlines may cause a problem with previously set deadlines in other matters[3].

There is no evidence before this Court that Ms. Johnson's involvement in any way caused actual bias on the part of Mr. Burruezo or that a reasonable person might perceive her involvement as causing bias.

---

[3] In fact, upon becoming involved in the matter, Ms. Johnson told Ms. Perez that she had another trial set in a federal court on the same trial calendar during the month that the final arbitration hearing was set. Therefore, as a heads up, Ms. Johnson let Ms. Perez know that there may potentially be a conflict.

11

**B.    Ms. Perez's Suggestion that Cigna "Retaliated" By "committing a Series of Actions Throughout the Discovery Process" Is Unsupported by Evidence And Does Not Establish Partiality.**

Ms. Perez next suggests in Paragraph 16 of her Motion to Vacate that "Respondent retaliated by committing a series of actions throughout the discovery process."  While this vague and ambiguous allegation is difficult to respond to as made, Cigna believes that Ms. Perez is referring to the fact that objections were asserted in response to discovery sought by Ms. Perez and that Cigna opposed spending hundreds of hours sorting through largely and likely irrelevant databases given the issues on this matter.  However, instead of the fact that Cigna opposed overlooked discovery supporting an argument that Mr. Burruezo was biased, the record shows that Mr. Burruezo actually compelled Cigna to produce far more discovery and expend far more time, resources and money than Cigna believed was required in this matter in responding.  In fact, at one point, Mr. Burruezo ordered that Cigna produce a large amount of data and Cigna had to file a motion to reconsider the order presenting new evidence that the production originally ordered would likely cost hundreds of thousands if not millions of dollars of legal fees in order to complete the electronic collection, review and production.  Thereafter, a smaller subset of the data was still ordered to be produced.

The only evidence on this point before this Court actually compels the conclusion that Mr. Burruezo was not partial to Cigna.

**C.    There is No Evidence of Ex Parte Communications Or That Any Communication Between Cigna's Counsel and the Arbitrator Caused Partiality.**

As noted above, Ms. Perez also suggests that Ms. Johnson "communicated in ex-parte with the Arbitrator to explain the timing of the joint stipulation."  Ms. Perez appears to be referencing an email on June 12th wherein Ms. Johnson is informing Ms. Perez that Cigna intends to file a motion requesting an extra day to file a pleading and asks whether Ms. Perez

wants to join in the request.  In fact, the motion was never filed because, before it was finalized, the arbitrator sent an email indicating that summary judgment was due to be granted.  Despite Ms. Perez's desire to suggest an ex parte communication in order to bolster this last ditch effort to avoid the conclusion that she could not establish a violation of the law on the part of Cigna, there simply was no such communication.

**D.      The Order Granting Summary Judgment Does Establish Partiality.**

Next, Ms. Perez notes that the Order on summary judgment bears a "close resemblance of the Respondent's motion for summary judgment," suggesting that it is a "'copy and paste.'" (Dkt. 1 p. 6.)  However, a simple comparison of the motion for summary judgment and the order reveal that while some cases cited by Cigna are also used by the arbitrator in the order and some of the wording of the undisputed facts are similar, the order is a far cry from a copy and paste of Cigna's motion.  In fact, in the motion for summary judgment, Cigna argued that Ms. Perez failed to engage in protected activity under Title VII and the arbitrator disagreed and found that there was evidence that she may have engaged in protected activity.  Further, Mr. Burruezo cites to several cases in his Order that were not cited by either party – showing his thorough review of the issues and application of his own analysis to the record facts before him.  Certainly, Ms. Perez cannot establish partiality through the Summary Judgment Order itself.

**E.      Ms. Perez Cannot Establish Any "Undisclosed Relationship" Between Mr. Jones – Cigna's Counsel of Record – and the Arbitrator to Establish Partiality.**

Last, Ms. Perez states that "Petitioner reviewed entire case and further researched into the parties and discovered the undisclosed relationships the arbitrator has with Mr. Jones.[4]  The arbitrator made it an effort to have Mr. Jones copied in on motions such as Motions for

---

[4]      Mr. Jeffrey Jones, the current Office Managing Shareholder of Littler's Orlando Office, is the shareholder responsible for this matter and supervised Mr. Schmitz then Ms. Johnson in the day to day handling of this matter.

Spoliation, Sanctions and Renew Sanctions." (Dkt. 1, p. 6.)  In support of her apparent argument that some new undisclosed relationship was realized, Ms. Perez attached a copy of a picture from the internet of Mr. Burruezo and Mr. Jones standing next to each other smiling on Mr. Burruezo's 50th birthday.  However, even if the prior relationship with the firm and therefore with the attorneys in the firm had not been disclosed, a picture of two lawyers together celebrating a birthday does not establish actual partiality or present a situation where a reasonable person may assume partiality.  Regardless, it cannot be disputed that the fact that Mr. Jones and Mr. Burruezo worked together at the time of Mr. Burruezo's 50th birthday party was disclosed to Ms. Perez three times.  In the third dislcosure, Mr. Burruezo specifically told the parties that if there was any concern as to his partiality, that they could either ask him any questions to learn more or that they could simply let AAA know.  Ms. Perez did neither. Instead, she proceeded with the case – happy with Mr. Burruezo's impartiality until the order dismissing her claims.

## **CONCLUSION**

While the FAA imposes a high burden upon a party seeking relief from a District Court in the form of vacating an arbitration award, it is unmistakable that Ms. Perez has failed to come close to discharging that burden.  Ms. Perez has not and cannot establish that there was actual partiality on the part of the arbitrator in this matter and has not and cannot establish any undisclosed fact that might suggest partiality.  Therefore, this Court is compelled to deny Ms. Perez's motion and grant judgment in favor of Cigna, affirming the award of the Arbitrator granting summary judgment in favor of Cigna on all claims.

Respectfully submitted.

Date:   February 1, 2019                    */s/ Nancy A. Johnson*
                                            Jeffrey B. Jones, Esquire
                                            Florida Bar No.: 0039950
                                            Email: jbjones@littler.com

                                            Nancy A. Johnson, Esquire
                                            Florida Bar No.: 0597562
                                            Email: najohnson@littler.com

                                            LITTLER MENDELSON, P.C.
                                            111 North Magnolia Avenue
                                            Suite 1250
                                            Orlando, Florida 32801
                                            Telephone:   407.393.2900
                                            Facsimile:   407.393.2929

                                            *Attorneys for Respondent*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a copy via email this 1st day of February, 2019 to the following CM/ECF participant:

> Glenda Perez
> 10158 Newminster Loop
> Ruskin, FL 33573
> Email: glendaperez52@yahoo.com
> Perezglenda924@gmail.com

*/s/ Nancy A. Johnson*
Nancy A. Johnson
Attorney for Respondent