UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GLENDA PEREZ,

      Plaintiff,

v.                                             Case No: 8:18-cv-1862-T-60JSS

CIGNA HEALTH AND LIFE
INSURANCE COMPANY,

      Defendant.

_____/

## REPORT AND RECOMMENDATION

THIS MATTER is before the Court on Petitioner's Application to Vacate Arbitration Award ("Motion") (Dkt. 1), including supplemental exhibits (Dkts. 7 & 8),[1] Cigna Health and Life Insurance Company's response in opposition, with attached exhibits (Dkt. 29), and Petitioner's reply in support (Dkt. 30). For the reasons that follow, the Court recommends that the Motion be denied.

## BACKGROUND

As part of her employment with Cigna Health and Life Insurance Company ("Cigna"), Glenda Perez agreed that "all serious employment related disputes that can not be resolved internally" would be resolved through mediation or arbitration, "and not in court." (Dkt. 29-1 at 4.) After Ms. Perez was terminated on July 27, 2017, she mailed Cigna a demand for arbitration, alleging violations of Cigna's policies, which was forwarded to the American Arbitration Association ("AAA") to begin the arbitration process. (Dkts. 7 & 8 at I.a.) Ms. Perez represented herself and Cigna was represented by Littler Mendelson P.C. ("Littler"). (Dkts. 7 & 8 at I.a.)

---

[1] Document numbers 7 and 8 were filed by hand and are compiled in a binder with the Clerk's office. Citations are based on the binder's table of contents and internal tabs.

The parties engaged in a lengthy process before selecting a mutually agreeable arbitrator. First, AAA provided a list of ten possible arbitrators.  (Dkt. 29-3 at 5.)  After receiving input from the parties, AAA appointed Edith N. Dineen as arbitrator.  (Dkts. 7 & 8 at I.b.)  However, after Ms. Dineen disclosed that she has served as arbitrator "in several cases where attorneys in various Littler office have been involved" (Dkt. 29-4 at 3), Ms. Perez objected to Ms. Dineen's appointment.  (Dkt. 29-5 at 2.)  Instead, Ms. Perez suggested Cary Singletary, to which Cigna objected.  (Dkts. 7 & 8 at I.b.)

Next, as agreed to by the parties, AAA provided a second list of seven potential arbitrators and provided the curriculum vitae for each candidate.  (Dkt. 29-6 at 2–4.)  Relevant here, the curriculum vitae of Carlos J. Burruezo disclosed that he worked as a managing shareholder at Littler from 2007 to 2014.  (Dkt. 29-6 at 5.)  On October 18, 2017, after the parties could not agree on an arbitrator, AAA informed the parties that it had the authority to appoint an arbitrator without the consent of the parties, but offered the parties additional time to "unstrike" any of the previously suggested arbitrators.  (Dkt. 29-7 at 2.)

Upon Cigna's request, AAA allowed the parties until October 23, 2017 to confer on an agreeable arbitrator.  (Dkt. 29-8 at 4–5.)  AAA also offered to provide an additional list of arbitrators if both sides agreed.  (Dkt. 29-8 at 3.)  In response, Ms. Perez wrote that "a third list" would "not be needed."  (Dkt. 29-8 at 4.)  Mr. Perez then listed her preferences of possible arbitrators, with Mr. Burruezo listed as her first choice.  (Dkt. 29-8 at 3.)  Cigna responded that they would accept Mr. Burruezo and specifically noted Ms. Perez's understanding that Mr. Burruezo was previously employed at Littler.  (Dkt. 29-8 at 3.)  AAA then confirmed that they would ask Mr. Burruezo to serve as arbitrator.  (Dkt. 29-8 at 2.)

After submitting his arbitrator oath form, on October 26, 2017, Mr. Burruezo emailed the parties an amended response, which read:

> Dear Parties:
>
> Please consider this as an amendment to the responses I provided to the arbitrator appointment. After further review of the pleadings and other matters filed with AAA, I feel compelled to note that, from May 2007 to March 2014, I served as a Shareholder with Littler Mendelson, P.C., the law firm that represents the Respondent in this matter. I was a resident of the Firm's Orlando Office, and served [as] the Orlando Office's Managing Shareholder from 2007 through 2013. During my tenure there (or at any other point in time in my career), I never handled any matters for CIGNA. I left the firm in March 2014 to join my wife (at Burruezo & Burruezo, PLLC) to focus my practice on the mediation and arbitration of employment disputes. I do not feel that my previous experience with Littler Mendelson, P.C. in any way causes me to feel any bias toward any particular party. As an arbitrator, my aim is to weigh the facts and law consistent with the evidence in an unbiased fashion.
>
> Of course, I will leave it up to the parties to assess my ability to serve, and will honor and respect the will of the parties.
>
> If you would like to schedule a hearing to discuss further, please so advise. You may also advise AAA of any concerns you might have.

(Dkt. 29-9.) Neither side objected to Mr. Burruezo serving as arbitrator after his amended disclosure.

After an initial hearing with the arbitrator, the parties proceeded with arbitration. (Dkts. 7 & 8 at VI; Dkt. 29-11; Dkt. 29-12; Dkt. 29-13; Dkt. 29-14.) On July 12, 2018, the arbitrator emailed the parties to inform them that Cigna's motion for summary judgment would be granted, with a comprehensive order to follow. (Dkt. 29-15 at 2.) On July 18, 2018, the arbitrator sent the parties his order granting summary judgment in favor of Cigna on all claims. (Dkt. 29-16 at 2–10.) In this action, Ms. Perez moves, under the Federal Arbitration Act ("FAA"), to vacate the final decision of the arbitrator. (Dkt. 1.)

## APPLICABLE STANDARDS

"Congress enacted the FAA to replace judicial indisposition to arbitration with a 'national policy favoring [it] and plac[ing] arbitration agreements on equal footing with all other contracts.'" *Hall St. Assocs., LLC v. Mattel, Inc.*, 552 U.S. 576, 581 (2008) (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006) (alterations in original)). Following arbitration proceedings, a party may file a motion under Section 10 of the FAA to vacate an arbitration award. *O.R. Sec., Inc. v. Prof'l Planning Assocs., Inc.*, 857 F.2d 742, 746 (11th Cir. 1988). Under Section 10, an arbitration award may be vacated only:

(1) where the award was procured by corruption, fraud, or undue means;

(2) where there was evident partiality or corruption in the arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).

## ANALYSIS

### A.    Subject-Matter Jurisdiction

After initial review of the Motion, the Court ordered the parties to file supplemental briefs concerning whether the Court had subject-matter jurisdiction. (Dkt. 41.) Specifically, the Court noted several circuits that held "that a motion to vacate arbitration must raise a federal question itself, without regard to the underlying claims in arbitration." (Dkt. 41 at 2–3.) In response, the parties agree that subject-matter jurisdiction is present. Ms. Perez cites primarily to *Doscher v. Sea Port Group Securities, LLC*, in which the Second Circuit held that "a federal district court

faced with a § 10 petition may 'look through' the petition to the underlying dispute, applying to it the ordinary rules of federal-question jurisdiction."   832 F.3d 372, 388 (2d Cir. 2016) (citing *Valden v. Discover Bank*, 556 U.S. 49 (2009)).

Defendant agrees and also cites to two cases in the Eleventh Circuit, *DIRECTV, LLC v. Arndt*, 546 F. App'x 836 (11th Cir. 2013), and *S. Comm'ns Servs. v. Thomas*, 720 F.3d 1352 (11th Cir. 2013).   In *Thomas*, the court addressed a motion to vacate arbitration based on an argument that the arbitrator exceeded his power under the FAA.   720 F.3d at 1354.   The Eleventh Circuit suggested that the district court had both federal-question and diversity jurisdiction.   *Id.* at 1357 n.5.   Then, in *Arndt*, an unpublished decision, the Eleventh Circuit again addressed a petition to vacate arbitration.   546 F. App'x at 838.   Although the parties did not specifically challenge federal question jurisdiction, the court cited *Thomas* and found that the district court had federal question jurisdiction because the underlying claims "arose under a federal statute."   *Arndt*, 546 F. App'x at 839.

Moreover, Defendant argues that even if federal question jurisdiction is lacking, the Court has diversity jurisdiction.   (Dkt. 44 at 4.)   In *Peebles v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, the Eleventh Circuit held that, where parties are of diverse citizenship, "a federal court has subject matter jurisdiction where a party seeking to vacate an arbitration award is also seeking a new arbitration hearing at which [s]he will demand a sum which exceeds the amount in controversy for diversity jurisdiction purposes."   431 F.3d 1320, 1325 (11th Cir. 2005).   Thus, because the parties are of diverse citizenship and Ms. Perez claims well over $75,000 in damages, Defendant argues that the Court also has diversity jurisdiction.

Based on the parties' arguments, the undersigned recommends that the Court find that it has subject-matter jurisdiction over this matter.

### B.    Evident Partiality

Ms. Perez moves to vacate the arbitration award based on alleged evident partiality of the arbitrator.  *See* 9 U.S.C. § 10(a)(2).  Because the FAA presumes that arbitration awards will be confirmed, "the 'evident partiality' exception is to be strictly construed" and the "alleged partiality must be 'direct, definite and capable of demonstration rather than remote, uncertain and speculative.'"  *Gianelli Money Purchase Plan & Tr. V. ADM Investor Servs., Inc.*, 146 F.3d 1309, 1312 (11th Cir. 1998) (quoting *Middlesex Mut. Ins. Co. v. Levine*, 675 F.2d 1197, 1202 (11th Cir. 1982)).  "[T]he mere appearance of bias or partiality is not enough to set aside an arbitration award."  *Lifecare Int'l, Inc. v. CD Med., Inc.*, 68 F.3d 439, 433 (11th Cir. 1995).

In the Eleventh Circuit, "an arbitration award may be vacated due to the 'evident partiality' of an arbitrator only when either (1) an actual conflict exists, or (2) the arbitrator knows of, but fails to disclose, information which would lead a reasonable person to believe that a potential conflict exists."  *Gianelli*, 145 F.3d at 1312.  "The burden of demonstrating facts which would establish a reasonable impression of partiality is on the party challenging the award."  *Austin S. I, Ltd. v. Barton-Malow Co.*, 799 F. Supp. 1135, 1142 (M.D. Fla. 1992) (citing *Middlsex Mut.*, 675 F.2d at 1201).  This burden "is a heavy one" and the party must "demonstrate that the arbitrator had a personal interest in the proceedings, whether pecuniary or otherwise, which would have biased his or her judgment in the proceedings."  *Austin S. I*, 799 F. Supp. at 1142.

Ms. Perez argues that there was evident partiality for two main reasons.[2]  First, Ms. Perez argues that evident partiality is shown by an undisclosed relationship between the arbitrator and

---

[2] Cigna addresses several complaints made by Ms. Perez regarding the arbitration process, including 1) Cigna's change of counsel, 2) Cigna's alleged "retaliation" in discovery, and 3) the arbitration order's alleged copying of Cigna's motion for summary judgment.  (Dkt. 29 at 11–13.)  Ms. Perez does not brief these points in either the Motion (Dkt. 1) or her reply (Dkt. 30.)  Regardless, to the extent Ms. Perez intends to raise these claims, they do not show evident partiality in the arbitrator and do not warrant further discussion for the reasons discussed by Cigna.

Jeffrey Jones, Cigna's counsel of record in the arbitration and a shareholder at Littler.  Second, Ms. Perez argues that evident partiality is shown by ex parte communications between the arbitrator and Cigna.  As discussed further below, neither of these claims meet the high burden of showing evident partiality.

### 1.    Relationship with Mr. Jones

Notably, the arbitrator's previous employment as the managing shareholder at Littler was fully disclosed prior to Ms. Perez's acceptance of the arbitrator.  (Dkt. 29-9.)  Accordingly, any claim of partiality regarding the arbitrator's relationship with Littler is waived.  *See Continental Ins. Co. v. Williams*, No. 84–2646–CIV–MARCUS, 1986 WL 20915, at *4 (S.D. Fla. Sept. 17, 1986) ("Where the parties are informed of relationships yet agree to the chosen arbitrators, they cannot later be heard to complain that an arbitration was impermissibly impartial.").  However, it appears that Ms. Perez's argument rests on an allegedly undisclosed relationship with Mr. Jones.  In support, Ms. Perez relies on a photo of the arbitrator and Mr. Jones "standing next to each other smiling on [the arbitrator's] 50th birthday."  (Dkt. 29 at 14.)

Assuming this constitutes an undisclosed relationship, "nondisclosure alone does not require vacatur of an arbitral award for evident partiality.  An arbitrator's failure to disclose must involve a significant compromising connection to the parties."  *Positive Software Solutions, Inc v. New Century Mortg. Corp.*, 476 F.3d 278, 282–83 (5th Cir. 2007).  *See also Freeman v. Pittsburgh Glass Works, LLC*, 709 F.3d 240, 256 (3d Cir. 2013) (explaining that the FAA "requires more than suppositions based on mutual familiarity").  At best, Ms. Perez's evidence shows a friendly relationship between the arbitrator and Mr. Jones.  But "standing alone, the fact that an arbitrator . . . had previous contacts with counsel for one of the parties does not suggest evident partiality."  *Univ. Commons-Urbana, Ltd. v. Universal Constructors Inc.*, 304 F.3d 1331, 1340 (11th Cir.

2002); *see also Austin S. I*, 799 F. Supp. at 1143 ("The mere fact that an arbitrator may have conversed with a party at some point during the proceedings is insufficient to establish 'evident partiality.'").

Ms. Perez has not pointed to evidence demonstrating a relationship that would establish evident partiality. *See Thames v. Woodmen of World Life Ins. Soc'y*, No. 13–0063–WS–N, 2013 WL 4162257, at *7 (S.D. Ala. Aug. 13, 2013) ("Absent facts or circumstances suggesting such previous contacts give rise to bias, financial linkages, ongoing business relations, or a significant compromising connection . . . , there is no § 10(a)(2) violation."); *In re Arbitration Between Sharp & River Birch Homes, Inc.*, No. MC-07-0018-KD-M, 2007 WL 9717906, at *5 (S.D. Ala. Dec. 27, 2007) ("Moreover, plaintiff has referenced no evidence or made any meritorious argument that Strickland had any reason to curry favor with Simpson for any pecuniary or professional gain."). As such, Ms. Perez has not shown an undisclosed relationship that "would lead a reasonable person to believe that a potential conflict exists." *Gianelli*, 146 F.3d at 1312.

### 2.    Ex Parte Communications

Next, Plaintiff argues that evident partiality is shown based on three ex parte communications "that were made via email" between the arbitrator and Cigna.  (Dkt. 1 at 10.) First, Ms. Perez references an email exchange in which she asked the arbitrator for a copy of the subpoena for her husband's deposition.  (Dkts. 7 & 8 at III.a.)  In response, Cigna informed her that she would not have been served with the subpoena but instead simply provided a notice of the deposition.  (Dkts. 7 & 8 at III.a.)  Second, Ms. Perez references an email exchange between the parties in discussing a joint stipulation.  (Dkts. 7 & 8 at III.b.)  After Ms. Perez suggested deleting a paragraph in which Cigna withdrew an argument raised in their motion for summary judgment, Cigna responded: "If you prefer that I delete that paragraph, that's agreeable, and I can just notify

the arbitrator separately that he does not need to consider that argument.  (Dkts. 7 & 8 at III.b.)

Third, Ms. Perez references an email exchange in which Cigna informed her that it planned to ask

the arbitrator "for permission to file [its] trial brief no later than noon" the next day and inquired

whether Ms. Perez would like to join the motion.  (Dkts. 7 & 8 at III.c.)

       The undersigned agrees with Cigna that the communications Ms. Perez references do not

establish that inappropriate ex parte communications occurred.  Nor do the communications rise

to the level of establishing evident partiality.  The first communication shows only that Cigna

obtained a subpoena from the arbitrator's office in accordance with AAA's rules.  American

Arbitration Association, Employment Arbitration Rules & Mediation Procedures, Rule 30 (2015)

("An arbitrator or other person authorized by law to subpoena witnesses or documents may do so

upon the request of any party or independently.")  The second and third communications show

only conferral between the parties on future communication—which would likely not be ex

parte—such as a motion.  Further, it appears that neither of these proposed communications ever

occurred.  After Cigna's response in the second communication, Plaintiff acknowledged that she

misunderstood Cigna's position and agreed to the stipulation.  (Dkts. 7 & 8 at III.b.)  Additionally,

Cigna points out that its proposed motion for extension of time referenced in the third

communication was never filed "because, before it was finalized, the arbitrator sent an email

indicating that summary judgment was due to be granted."  (Dkt. 29 at 13.)

       Even if the ex parte communications occurred as Ms. Perez contends, they do not warrant

vacatur of the arbitration award.  Ms. Perez argues that ex parte communications violate AAA's

rules, but violation of the arbitration rules is not a basis to vacate an award.  *See ANR Coal Co. v.*

*Cogentrix of N.C., Inc.*, 173 F.3d 493 (4th Cir. 1999) ("When parties agree to be bound by the

AAA rules, those rules do not give a federal court license to vacate an award on grounds other than

those set forth in 9 U.S.C. § 10."). Instead, the communications must establish evident partiality, not simply "the 'mere appearance' of bias or partiality," *Cont'l Cas. Co. v. Staffing Concepts, Inc.*, No. 8:09–CV–02036–T–23AEP, 2011 WL 7459781, at *6 (M.D. Fla. Dec. 20, 2011) (citing *Lifecare*, 68 F.3d at 433)), which the alleged communications in this case fail to do. *See id.* (finding that several ex parte communications involving "scheduling and logistical matters" did not constitute 'direct' or 'definite' evidence of partiality"). In sum, Ms. Perez has failed to establish a basis to vacate the arbitrator's decision in this case.

Accordingly, it is **RECOMMENDED** that:

1. Petitioner's Application to Vacate Arbitration Award (Dkt. 1) be **DENIED**; and

2. The Clerk be directed to **CLOSE** the case.

**IT IS SO REPORTED** in Tampa, Florida, on June 4, 2020.

_____
JULIE S. SNEED
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

Copies furnished to:
The Honorable Thomas P. Barber
Counsel of Record
Unrepresented Party